IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| STEVE HOISINGTON, Special Administrator of the Estate of SHARON HOISINGTON, Deceased, | ) ) ) ) | Case No. _____ |
| Plaintiff, | ) ) ) | **COMPLAINT** |
| vs. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

The plaintiff, Steve Hoisington, states as follows:

1. He is the surviving spouse of Sharon Hoisington, deceased, and the Special Administrator of the Estate of Sharon Hoisington, having been appointed by the County Court of Sarpy County, Nebraska.

2. Jursidiction in this matter is based upon 42 U.S.C. §233(g)-(n), commonly known as the Federally Supported Health Centers Assistance Act (FSHCAA).

3. As required by statute, Steve Hoisington, the Special Administrator of the estate of his late wife, Sharon Hoisington, presented his claim on behalf of himself and the estate of Sharon Hoisington on Standard Form 95 with the defendant by mailing this claim to the Office of General Counsel for the United States Department of Health & Human Services on August 4, 2009. This claim was received on August 10, 2009, and was assigned claim number 09-0441. A copy of the claim and acknowledgment and receipt thereof are attached hereto as Exhibit 1 and incorporated herein by reference.

4.      The Office of the General Counsel for the United States Department of Health & Human Services has neither allowed nor denied the claim within six months of the receipt of the claim, and plaintiff therefore is authorized to file this action.

5.      Plaintiff, Steve Hoisington, is a resident of LaVista, Sarpy County, Nebraska and a citizen of the United States. On September 29, 2008, Sharon Hoisington died. At the time of her death, Sharon Hoisington was a resident of LaVista, Sarpy County, Nebraska, and a citizen of the United States.

6.      On May 16, 2008, Sharon Hoisington was 49 years of age. On that date, she was experiencing chest pain which radiated into her jaw and right arm. On that date, she called the office of her primary care physician, Takashi Kawamitsu, who was employed by Charles Drew Health Center, and requested that she be seen at his office for these symptoms. She was referred to the emergency room at Alegent Health-Midlands Hospital for evaluation and treatment of her symptoms.

7.      At all times material herein, Charles Drew Health Center was a Federally Qualified Health Center and was under the United States Department of Health & Human Services, Bureau of Primary Health Care. Likewise, its physicians and other medical personnel, to include Takashi Kawamitsu, M.D., were employees of the defendant and were acting within the scope of their employment with the defendant.

8.      On May 16, 2008, Sharon Hoisington presented herself to the emergency room at Alegent Health-Midlands Hospital with her chief complaint being that of chest pain radiating into her jaw and right arm. She was evaluated by the emergency room physician and by a cardiologist at that time. She was discharged from the emergency room at Alegent Health-

2

Midlands Hospital by the emergency room physician, Dr. Richard Alarid. Dr. Alarid's discharge diagnosis was chest pain which had resolved. Sharon Hoisington was then instructed by the emergency room physician, Dr. Richard Alarid, to follow-up with her primary care physician, namely, Takashi Kawamitsu.

9. Pursuant to the instructions given to her by the emergency room physician at Alegent Health-Midlands Hospital, Sharon Hoisington was seen as a patient at the office of Takashi Kawamitsu. The date of the office visit was May 20, 2008. At the time of this office visit, Sharon Hoisington's chief complaints were that of recurrent chest pain radiating to her chin and right arm. After evaluating Sharon Hoisington, Takashi Kawamitsu arrived at the following diagnoses:

    a) recurrent chest pain radiating to her chin and right arm;

    b) chronic obstructive pulmonary disease (COPD) and asthma;

    c) hypothyroidism.

In addition, Takashi Kawamitsu indicated that he was going to obtain the medical records from the emergency room visit at Alegent Health-Midlands Hospital where Sharon Hoisington two days before had been seen as a patient. Prior to leaving the office of Takashi Kawamitsu on May 20, 2008, he recommended that Sharon Hoisington be seen as a patient at his office in three months.

10. On August 28, 2008, Sharon Hoisington was again seen as a patient at the Charles Drew Health Center and was evaluated by its physician employee, namely, Takashi Kawamitsu. During the course of Takashi Kawamitsu's evaluation of Sharon Hoisington, he learned that Sharon Hoisington was again experiencing recurrent chest pain which radiated to her jaw and

right shoulder and lasted a few minutes. Takashi Kawamitsu further learned that this pain occurred when she was resting, as well as when she was exerting herself.

11.     After Takashi Kawamitsu finished with his examination and evaluation of Sharon Hoisington on August 28, 2008, he arrived at the following diagnoses:

    a)    recurrent chest pain;

    b)    asthma and chronic obstructive pulmonary disease (COPD);

    c)    hypothyroidism;

    d)    elevated cholesterol.

At the conclusion of Takashi Kawamitsu's evaluation of Sharon Hoisington, on August 28, 2008, he recommended that she return to his office in three to four months.

12.     On September 29, 2008, Sharon Hoisington was discovered by her husband, Steve Hoisington, in her bed and unresponsive. Steve Hoisington immediately attempted cardiopulmonary resuscitation efforts (CPR) on his wife, and simultaneously called the rescue squad. Upon arriving at the residence of Steve and Sharon Hoisington, the rescue squad personnel noted that Sharon Hoisington was not breathing and thereafter transported Sharon Hoisington to the emergency room department at Alegent Health-Midlands Hospital. Despite aggressive resuscitation efforts, Sharon Hoisington died on September 29, 2008, at approximately 7:31 a.m.

13.     An autopsy was performed on Sharon Hoisington and this autopsy indicated that the cause of her death was hypertensive disease and coronary atherosclerosis.

14.     The death of Sharon Hoisington was a direct and proximate result of the negligence of the agents and employees of the United States of America, namely, Takashi

Kawamitsu, in connection with his care and treatment of Sharon Hoisington from May 20, 2008 through the time of her death on September 29, 2008. That the defendant was negligent in each and all of the following respects:

- a) In failing to properly treat Sharon Hoisington for her chest pain which was present while she was in the office of Takashi Kawamitsu on May 20, 2008 and August 28, 2008;

- b) In failing to refer Sharon Hoisington to a cardiologist for the evaluation and treatment of her chest pain which was present on May 20, 2008 and August 28, 2008;

- c) In failing to perform an EKG on Sharon Hoisington on May 20, 2008 and on August 28, 2008;

- d) In failing to arrive at a proper diagnosis of Sharon Hoisington's condition on May 20, 2008 and August 28, 2008;

- e) In failing to obtain a proper and complete medical history from Sharon Hoisington on May 20, 2008 and August 28, 2008;

- f) In failing to properly treat Sharon Hoisington's hypertension from May 20, 2008 through August 28, 2008.

15. As a direct and proximate result of the negligence of the defendant, the United States of America, as set forth above, the immediate surviving next of kin of Sharon Hoisington, deceased, have been deprived of the comfort of her society and companionship, her services and earnings, as well as other pleasures and rights, having a pecuniary value, which attend immediate family relationships, including interspousal consortium.

16. As a further direct and proximate result of the negligence of the defendant, the United States of America, Sharon Hoisington's estate incurred expenses for funeral and burial.

17. As a further direct and proximate result of the negligence of the defendant, the United States of America, Sharon Hoisington sustained pain and suffering from May 20, 2008

through the time of her death on September 29, 2008.

WHEREFORE, plaintiff prays for judgment against the defendant, the United States of America, as follows:

    A)    For special damages, general damages in the amount of $1,600,000.00, and for the costs of this action; and

    B)    For such other damages that are reasonable and proper.

STEVE HOISINGTON, Special Administrator of the Estate of SHARON HOISINGTON, Deceased, Plaintiff

By: *[signature]*

E. Terry Sibbernsen #13826
SIBBERNSEN & STRIGENZ, P.C.
1111 N.102nd Ct., #330
Omaha, NE 68114
(402) 493-7221

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: US Department of Health and Human Services Office of the General Counsel 200 Independence Avenue S.W. Washington D.C. 20201 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code) Steve Hoisington, Special Administrator of the Estate of Sharon Hoisington, Deceased 8809 Pine Drive La Vista, Nebraska 68128 |
|---|---|

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH 2/15/1959 | 5. MARITAL STATUS Married | 6. DATE AND DAY OF ACCIDENT May 20, 2008 and August 28, 2008 | 7. TIME (A.M. OR P.M.) Unknown |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

Incident occurred while Sharon Hoisington was being seen as a patient at Charles Drew Health Center, Inc. located at 2915 Grant Street, Omaha, Nebraska 68111. Attached to this Standard Form 95 is a Complaint marked Exhibit "A" which sets forth all known facts and circumstances surrounding the death of Sharon Hoisington. The attached Complaint also sets forth the allegations of negligence asserted against Dr. Takashi Kawamitsu, an employee of Charles Drew Health Center, Inc.

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

As a result of the negligence of employees of Charles Drew Health Center, Inc., Sharon Hoisington died on September 29, 2008.

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Dr. Takashi Kawamitsu | 2915 Grant Street Omaha, Nebraska 68111 |

12. (See instructions on reverse.) AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
|  | $100,000.00 | $1,500,000.00 | $1,600,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) Special Administrator | 13b. Phone number of person signing form 402-706-6913 | 14. DATE OF SIGNATURE 07/30/2009 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

95-109  NSN  **EXHIBIT 1**

STANDARD FORM 95 PRESCRIBED BY DEPT. OF JUSTICE 28 CFR 14.2

| INSURANCE COVERAGE |
|---|
| In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property. |
| 15. Do you carry accident insurance? ☐ Yes  If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☐ No |
| 16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☐ No  17. If deductible, state amount. |
| 18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.) |
| 19. Do you carry public liability and property damage insurance? ☐ Yes  If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  ☐ No |

### INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

[Return receipt card:]

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: 700-E
US Dept. of Health & Human Services
Office of General Counsel
200 Independence Ave. SW
Washington, DC 20201

COMPLETE THIS SECTION ON DELIVERY
A. Signature  X Dora Ricks  ☐ Agent ☐ Addressee
B. Received by (Printed Name): DORA RICKS  C. Date of Delivery: 8-10-09
D. Is delivery address different from item 1? ☐ Yes  If YES, enter delivery address below: ☐ No

3. Service Type: ☑ Certified Mail ☐ Express Mail ☐ Registered ☐ Return Receipt for Merchandise ☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label): 7005 1160 0001 1532 1894

PS Form 3811, February 2004  Domestic Return Receipt  102595-02-M-1540

SF 95  BACK

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| STEVE HOISINGTON, Special Administrator of the Estate of SHARON HOISINGTON, Deceased, | ) ) ) ) | DOC.            NO. |
| Plaintiff, | ) ) ) | **COMPLAINT** |
| vs. | ) ) | |
| CHARLES DREW HEALTH CENTER INC., and TAKASHI KAWAMITSU, | ) ) ) | |
| Defendants. | ) | |

Plaintiff states:

1. Plaintiff, Steve Hoisington, is the surviving spouse of Sharon Hoisington, deceased. Steve Hoisington has been appointed Special Administrator of the Estate of Sharon Hoisington by the County Court of Sarpy County, Nebraska.

2. Defendant, Charles Drew Health Center, Inc. (hereinafter sometimes referred to as "Charles Drew") is a Nebraska non-profit corporation, and at all times material operated a medical clinic in Omaha, Douglas County, Nebraska.

3. Defendant, Takashi Kawamitsu, was a physician licensed to practice medicine in the State of Nebraska.

4. Upon information and belief, plaintiff states that at all times relevant hereto, Takashi Kawamitsu was an employee of Charles Drew, and was engaged in the course and scope of his employment. The acts of negligence of the defendant, Takashi Kawamitsu, as further set forth in this Complaint, are imputed to the defendant, Charles Drew, under the doctrine of respondeat superior.



EXHIBIT A

5. That all of the defendants, at all times herein mentioned, **were not** qualified under the Nebraska Hospital-Medical Liability Act.

6. On May 16, 2008, Sharon Hoisington was 49 years of age. On that date, she was experiencing chest pain which radiated into her jaw and right arm. On that date, she called the office of her primary care physician, the defendant, Takashi, Kawamitsu, and requested that she be seen at his office for these symptoms. She was referred to the emergency room at Alegent Health-Midlands Hospital for the evaluation and treatment of her symptoms.

7. On May 16, 2008, Sharon Hoisington presented herself to the emergency room at Alegent Health-Midlands Hospital with her chief complaint being that of chest pain radiating into her jaw and right arm. She was evaluated by the emergency room physician and by a cardiologist at that time. She was discharged from the emergency room at Alegent Health-Midlands Hospital by the emergency room physician, Dr. Richard Alarid. Dr. Richard Alarid's discharge diagnosis was chest pain which had resolved. Sharon Hoisington was then instructed by the emergency room physician, Dr. Richard Alarid, to follow-up with her primary care physician, the defendant, Takashi Kawamitsu.

8. Pursuant to the instructions given to her by the emergency room physician at Alegent Health-Midlands Hospital, Sharon Hoisington was seen as a patient at the office of the defendant, Takashi Kawamitsu. The date of the office visit was May 20, 2008. At the time of this office visit, Sharon Hoisington's chief complaints were that of recurrent chest pain radiating to her chin and right arm. After evaluating Sharon Hoisington, the defendant, Takashi Kawamitsu, arrived at the following diagnoses:

    a)     recurrent chest pain radiating to her chin and right arm;

2

    b)    chronic obstructive pulmonary disease (COPD) and asthma;

    c)    hypothyroidism.

In addition, the defendant, Takashi Kawamitsu, indicated that he was going to obtain the medical records from the emergency room at Alegent Health-Midlands Hospital where Sharon Hoisington two days before had been seen as a patient. Prior to leaving the office of the defendant, Takashi Kawamitsu, on May 20, 2008, he recommended that Sharon Hoisington be seen as a patient at his office in three months.

    9.    On August 28, 2008, Sharon Hoisington was again seen as a patient at the office of the defendant, Takashi Kawamitsu. During the course of Takashi Kawamitsu evaluating Sharon Hoisington, he learned that Sharon Hoisington was again experiencing recurrent chest pain which radiated to her jaw and right shoulder and lasted a few minutes. The defendant, Takashi Kawamitsu, further learned that this pain occurred when she was resting, as well as when she was exerting herself.

    10.    After the defendant, Takashi Kawamitsu, finished with his examination and evaluation of Sharon Hoisington on August 28, 2008, he arrived at the following diagnoses:

    a)    recurrent chest pain;

    b)    asthma and chronic obstructive pulmonary disease (COPD);

    c)    hypothyroidism;

    d)    elevated cholesterol.

At the conclusion of the defendant, Takashi Kawamitsu' evaluation of Sharon Hoisington, on August 28, 2008, he recommended that she return to his office in three to four months.

11. On September 29, 2008, Sharon Hoisington was discovered by her husband, Steve Hoisington, in her bed and unresponsive. That Steve Hoisington immediately attempted cardiopulmonary resuscitation efforts (CPR) on his wife, and simultaneously called the rescue squad. Upon arriving at the residence of Steve Hoisington and Sharon Hoisington, the rescue squad personnel noted that Sharon Hoisington was not breathing and thereafter transported Sharon Hoisington to the emergency room department at Alegent Health-Midlands Hospital. Despite aggressive resuscitation efforts, Sharon Hoisington died on September 29, 2008, at approximately 7:31 a.m.

12. An autopsy was performed on Sharon Hoisington and this autopsy indicated that the cause of her death was hypertensive disease and coronary atherosclerosis.

13. The death of Sharon Hoisington was a direct and proximate result of the negligence of the defendants in connection with their care and treatment of Sharon Hoisington from May 20, 2008 through the time of her death on September 29, 2008. That the defendants were negligent in each and all of the following respects:

   a) In failing to properly treat Sharon Hoisington for her chest pain which was present while she was in the office of the defendants on May 20, 2008 and August 28, 2008;

   b) In failing to refer Sharon Hoisington to a cardiologist for the evaluation and treatment of her chest pain which was present on May 20, 2008 and August 28, 2008;

   c) In failing to perform an EKG on Sharon Hoisington on May 20, 2008 and on August 28, 2008;

   d) In failing to arrive at a proper diagnosis of Sharon Hoisington's condition on May 20, 2008 and August 28, 2008;

4

e)  In failing to obtain a proper and complete medical history from Sharon Hoisington on May 20, 2008 and August 28, 2008.

14. As a direct and proximate result of the negligence of the defendants, and each of them, as set forth above, the immediate surviving next of kin of Sharon Hoisington, deceased, have been deprived of the comfort of her society and companionship, her services and earnings, as well as other pleasures and rights, having a pecuniary value, which attend immediate family relationships, including interspousal consortium.

15. As a further direct and proximate result of the negligence of the defendants, and each of them, Sharon Hoisington's estate incurred expenses for funeral and burial.

16. As a further direct and proximate result of the negligence of the defendants, and each of them, Sharon Hoisington sustained pain and suffering from May 20, 2008 through the time of her death on September 29, 2008.

WHEREFORE, plaintiff prays for judgment against the defendants, and each of them, for his special and general damages, and for such other relief as may be allowed by the laws of the State of Nebraska.

STEVE HOISINGTON, Special Administrator of the Estate of SHARON HOISINGTON, Deceased, Plaintiff

By: _____
E. Terry Sibbernsen #13826
SIBBERNSEN & STRIGENZ, P.C.
1111 N.102nd Ct., #330
Omaha, NE 68114
(402) 493-7221

IN THE COUNTY COURT OF ....SARPY.... COUNTY, NEBRASKA

IN THE MATTER OF THE ESTATE OF  )   No. PR09-165
                                )
                                )   LETTERS OF
SHARON HOISINGTON               )   SPECIAL ADMINISTRATOR
........................, Deceased )

**FILED JUN 2 2009 CLERK OF SARPY COUNTY COURT DISTRICT TWO**

THE STATE OF NEBRASKA:

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, on ...6-2-09... Steve Hoisington ............ was appointed in an ..informal........... proceeding and qualified as Special Administrator of the above-named Decedent by this Court or its Registrar, with all the authority granted by law;

NOW, THEREFORE, these Letters are issued as evidence of such appointment and qualification and authority of ........Steve Hoisington........... to do and perform all acts which may be required by law.

WITNESS, the signature of a Judge or Registrar of this Court, and the seal of this Court on ...6/2/09

[Seal of the County Court, Sarpy County, Nebraska]

...................................
County Judge
(Formal Proceeding Only)

...................................
Signature of Registrar
(Informal Proceeding Only)

CERTIFICATION

STATE OF NEBRASKA )
COUNTY OF SARPY   ) ss.

I, Clerk/Assistant Clerk, of the Sarpy County Court, certify this document consisting of __1__ page(s), to be a full, true and correct copy of the original record on file in the Sarpy County Court.
IN TESTIMONY THEREOF, I have placed my signature and the seal of said court.

DATE 6-3-09  THE COURT: _Sherry DeLarcey_
                         Clerk/Assistant Clerk

000066803C59

**EXHIBIT B**

NCLE Form 244
§§ 30-2459 & 30-2460

© 1991, Nebraska Continuing Legal Education, Inc.

Page 1 of 1 Page
Rev. 3/91

PAGE 200-95